IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TANISHA SYSTEMS, INC.,

        Plaintiff,

    vs.

PRAKASH CHANDRA,

       Defendant.

Civil Action No.: 1:15-cv-2644

---

**DEFENDANT'S RESPONSE BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

The Court should deny Plaintiff's Motion to Dismiss Defendant's Counterclaims.

I.   **INTRODUCTION**

Plaintiff Tanisha Systems, Inc. ("Plaintiff") has a history of discriminating against foreign H-1B visa workers and violating labor laws. Plaintiff filed this lawsuit to retaliate against Defendant after he blew the whistle to the U.S. Department of Labor about Plaintiff's unlawful pattern of withholding earned wages and overtime pay from its foreign H-1B visa workers.[1] In

---

[1] It is a matter of public record that in May 2014, the Department of Labor ordered Plaintiff to pay $23,306.67 back pay wages to its H-1B visa workers as a direct result of the complaint that Defendant filed in November 2012. That wasn't even Plaintiff's first major H-1B violation. In 2007, the Department of Labor ordered Plaintiff to pay $33,476.58 back pay wages to its H-1B visa workers.

response, Defendant filed Counterclaims[2] against Plaintiff seeking compensatory damages, liquidated damages equal to lost wages, front pay damages for lost future earning capacity, attorneys' fees, and punitive damages.

**A.  Factual Background**

The well-pleaded facts of Defendant's Counterclaims that must be accepted as true for the purposes of Plaintiff's Motion to Dismiss[3] are as follows:

**1.  Defendant's Unpaid Labor Prior to the Parties' Written Employment Agreement**

Prior to his hiring, Defendant and Plaintiff's Vice-President, Gorav Aggarwal had preliminary discussions and exchanged e-mails concerning potential terms of employment.[4] In an e-mail dated March 16, 2010, Mr. Aggarwal promised Defendant that his "[c]omplete benefit package ... will be 80% of his [client billing rate] never more and never less."[5] Defendant relied upon Mr. Aggarwal's written e-mail promises and accepted Plaintiff's employment offer on March 16, 2010.[6]

---

[2] Count I of Defendant's Counterclaims alleges that Plaintiff retaliated against him in violation of the Fair Labor Standards Act (29 U.S.C.A. § 215). Count II of Defendant's Counterclaims alleges that Plaintiff was unjustly enriched by his labor.
[3] See Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).
[4] Def's Counterclaims at ¶ 7.
[5] Def's Counterclaims at ¶ 9.
[6] Def's Counterclaims at ¶ 10.

On March 19, 2010, Plaintiff executed a purchase order with one of its clients, Okaya, Inc. ("Okaya Purchase Order").[7] Pursuant to the terms of the Okaya Purchase Order, Okaya, Inc. agreed to hire Plaintiff for an extended project assignment beginning on March 22, 2010.[8] The Okaya Purchase Order identified Defendant as the "designated contractor resource."[9] The Okaya Purchase Order stated that Defendant's hourly billing rate was $50 per hour.[10]

Defendant agreed to begin working on the Okaya, Inc. account in reliance upon Mr. Aggarwal's e-mail promises; however, Defendant expressed reservations about doing so because he had not yet received a formal offer letter memorializing the employment terms upon which he and Mr. Aggarwal agreed.[11] Mr. Aggarwal re-assured Defendant that Plaintiff would honor the terms set forth in his aforementioned March 15-16, 2010 e-mails to Defendant.[12] Defendant relied upon Mr. Aggarwal's promises and began to work on the Okaya, Inc. account on March 22, 2010.[13] By the time Defendant received Plaintiff's employment offer letter

---

[7] Def's Counterclaims at ¶ 12.
[8] Def's Counterclaims at ¶ 13.
[9] Def's Counterclaims at ¶ 14.
[10] Def's Counterclaims at ¶ 15.
[11] Def's Counterclaims at ¶ 19.
[12] Def's Counterclaims at ¶ 20.
[13] Def's Counterclaims at ¶ 21.

in May 2010, he had worked uncompensated for Plaintiff for at least five (5) weeks.[14]

### 2.    Plaintiff's Broken Promises

When Defendant reviewed his first pay stub in May 2010, he immediately noticed that his paycheck was dramatically less than 80% of the hourly fees that he had billed on the Okaya, Inc. account to date.[15] Defendant complained to Mr. Aggarwal about the pay check discrepancy.[16] Mr. Aggarwal replied that Defendant would receive a fixed salary each pay period; however, Defendant would receive the "balance" of his compensation every six (6) months.[17] In other words, Mr. Aggarwal represented that Defendant would receive compensation equivalent to 80% of the hourly fees that he had billed to each client by the end of each six (6) month billing period.[18] To this day, Plaintiff has never paid Defendant any of his earned balance money from March 22, 2010 to August 30, 2011 despite promising to do so on many occasions.[19]

Mr. Aggarwal also changed the terms and conditions of Defendant's employment on multiple occasions[20] before terminating

---

[14] Def's Counterclaims at ¶ 41.
[15] Def's Counterclaims at ¶ 45.
[16] Def's Counterclaims at ¶ 46.
[17] Def's Counterclaims at ¶ 47.
[18] Def's Counterclaims at ¶ 48.
[19] Def's Counterclaims at ¶¶ 56, 58, 59, 63, 65, 69, 83, 85, 89, 96, 115.
[20] Def's Counterclaims at ¶¶ 92, 99, 104.

Defendant's employment on July 21, 2011.[21] Plaintiff re-instated Defendant's employment until Defendant resigned on August 30, 2011.[22]

### 3.   Defendant's Protected FLSA Activity

On August 31, 2012, Defendant filed a complaint with the United States Department of Labor.[23] Defendant alleged that Plaintiff failed to pay him his earned wages.[24] Defendant also alleged that Plaintiff failed to pay earned wages to 13 other H-1B employees.[25] The Department of Labor substantiated many of Defendant's allegations after a multi-year investigation that concluded in April 2014.[26] The Department of Labor ordered Plaintiff to pay $23,306.67 back pay wages to its current and former H-1B employees.[27] This was the second time in seven (7) years that the Department of Labor ordered Plaintiff to pay substantial back pay wages to its H-1B employees.[28] In 2007, the Department of Labor ordered Plaintiff to pay $33,476.58 back pay wages to its H-1B employees.[29] Plaintiff has continued to withhold Defendant's earned wages and overtime pay from April 2014 to the

[21] Def's Counterclaims at ¶ 100.
[22] Def's Counterclaims at ¶ 114.
[23] Def's Counterclaims at ¶ 116.
[24] Def's Counterclaims at ¶ 117.
[25] Def's Counterclaims at ¶ 118.
[26] Def's Counterclaims at ¶¶ 119–120.
[27] Def's Counterclaims at ¶ 121.
[28] Def's Counterclaims at ¶ 122.
[29] Def's Counterclaims at ¶ 123.

present even though the Department of Labor substantiated his complaints.[30]

## B.   Procedural Background

Plaintiff filed this lawsuit on July 27, 2015. Defendant filed his Motion to Dismiss Plaintiff's claims on August 26, 2015. The Court granted Defendant's Motion in part, and denied it in part on December 4, 2015. Defendant timely filed his Answer and Counterclaims on December 18, 2015. Plaintiff filed its Motion to Dismiss Defendant's Counterclaims on January 5, 2016. This Response in Opposition follows.

## II.   ARGUMENTS AND AUTHORITIES

## A.   Legal Standard

The Federal Rules require only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The goal is to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Conley v. Gibson, 355 U.S. 41, 47 (1957). Therefore, on a motion to dismiss, the court must accept the allegations in the complaint as true and view them in the light most favorable to the nonmoving party. See Butler v. DeKalb County School Dist., No. 14-cv-1768, 2015 WL 4598292, at * 6 (N.D. Ga. July 29, 2015). All inferences should thus be resolved in the non-movant's favor.

---

[30] Def's Counterclaims at ¶¶ 115, 120.

See _Anderson v. Southern Home Care Services, Inc.,_ No. 23-cv-840, 2014 WL 1153393, at * 3 (N.D. Ga. Mar. 21, 2014).

The complaint does not need to provide every detail in the factual allegations; it need only contain "enough facts to state a claim to relief that is plausible on its face." See _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007). Therefore, to state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009).

Moreover, even post-Twombly, where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible, facts may be alleged on information and belief. See _Functional Products Trading, S.A. v. JITC, LLC_, No. 12-cv-0355, 2014 WL 3749213, at * 8 (N.D. Ga. July 29, 2014) (Duffey, J.) (citing _Arista Records, LLC v. Doe 3_, 604 F.3d 110, 120 (2d Cir. 2010)). In addition, "the plausibility inquiry properly takes into account whether discovery can reasonably be expect to fill any holes in the pleader's case." See _Garcia-Catalan v. U.S._, 734 F.3d 100, 104-05 (1st Cir. 2013) (quoting _Twombly_ for the requirement that a complaint need only contain

"enough facts to raise a reasonable expectation that discovery will reveal evidence.").

**B.   Defendant has Plausibly Alleged his FLSA Retaliation Claim**

   **1.   Adverse Employment Action**

The Court should deny Plaintiff's Motion pursuant to F.R.C.P. 12(b)(6) because Plaintiff has not demonstrated that any of the alleged claims in its retaliatory lawsuit will survive summary judgment.

A lawsuit may constitute an "adverse employment action" for purposes of a retaliation claim under the Fair Labor Standards Act if it is brought with: 1) a retaliatory motive; and 2) lacks a reasonable basis in law or fact. See Smith v. Miami-Dade County, 21 F.Supp.3d 1286, 1290-91 (S.D. Fla. 2014); see also Obester v. Lucas Associates, Inc., No. 08-cv-3491, 2010 WL 8304844, at *3 (N.D. Ga. Sept. 7, 2010) (citing Bill John's Restaurants v. NLRB, 461 U.S. 731, 744 (1983) ("A suit is baseless if ... no reasonable jury could [find] in favor of the plaintiff").

In its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, the Court candidly observed that "[Plaintiff's] Complaint contains significant problems which are almost certain to rear their head at summary judgment, trial, or

before."[31] The Court added that "[t]he allegations themselves contain more than a hint of vagueness – they contain enough factual material to get past the hurdle of a Rule 12(b)(6) motion, but not by much ... In sum, this is a Complaint with problems.")[32]

Clearly, there is a real possibility that none of Plaintiff's claims will survive summary judgment. Until the Court determines whether any of Plaintiff's claims will survive summary judgment, it is premature for the Court to determine whether Plaintiff's lawsuit constitutes an adverse employment action.

Additionally, as discussed more fully in the following sub-section, Defendant has adequately pleaded a chain of intervening retaliatory acts between his FLSA protected speech and Plaintiff's retaliatory lawsuit. Accordingly, Plaintiff's Motion to Dismiss on the alleged ground that Defendant has not alleged any adverse action should be denied.

### 2.   Causation

The Court should deny Plaintiff's Motion pursuant to F.R.C.P. 12(b)(6) because Defendant adequately pleaded a chain of intervening retaliatory acts between his FLSA protected speech and Plaintiff's retaliatory lawsuit. The Court should also deny

---

[31] Doc. 15 at p. 2.
[32] Doc. 15 at pp. 2-3.

Plaintiff's Motion pursuant to F.R.C.P. 12(b)(6) because causation is an element that should be addressed at the summary judgment phase of this lawsuit once the parties complete discovery.

To satisfy the causation element of an FLSA anti-retaliation claim, a Plaintiff must allege a causal connection between his protected conduct and the resultant discrimination in employment. Mann v. Olsten Certified Healthcare Cop., 49 F.Supp.2d 1307, 1316 (M.D. Ala. 2009). Such a showing is "not onerous," as a Plaintiff must "merely [ ] prove that the protected activity and the negative employment action are not completely unrelated." Id.; see also Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997) (emphasis removed) (Title VII).

While "[t]emporal proximity between protected expression and the alleged adverse action is relevant circumstantial evidence of causation ... the lack of temporal proximity becomes relevant only when it is the only evidence relied upon by the Plaintiff to establish causation." Wiggins v. McHugh, No. cv-109-142, 2010 WL 1640968, at * 3 (S.D. Ga. Apr. 22, 2010) (quoting Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). Courts have routinely found a causal connection even as to retaliatory acts occurring long after the protected activity, where those events are linked by a chain of intervening retaliatory acts. Johnson v.

Advertiser Co., 778 F.Supp.2d 1270, 1279-80 (M.D. Ala. 2011)
(citing Greathouse v. Premier Beverage Co., No. 8:08-cv-1170-T-
30TGW, 2009 WL 3429796, at * 10 (M.D. Fla. Oct. 21, 2009) (citing
Bass v. Board of County Com'rs, Orange County, Fla., 256 F.3d
1095, 1117-19 (11th Cir. 2001) (deeming the causal connection
element satisfied even though the adverse action occurred more
than one year after the EEOC charge, where the retaliatory acts
commenced shortly after the charge was filed) (overruled on other
grounds).

Plaintiff concedes for the purposes of its Motion that
Defendant engaged in protected FLSA activity when he filed a
complaint with the U.S. Department of Labor on August 31, 2012.[33]
Plaintiff concedes for the purposes of its Motion that Defendant
participated in the Department of Labor's investigation of his
complaint from August 31, 2012 to April 2014 when the
investigation concluded and the Department of Labor ordered
Plaintiff to pay $23,306.67 back pay wages to its employees.[34]

Defendant contends that Plaintiff retaliated against him for
engaging in protected FLSA activity, in part, by withholding his
earned wages and overtime pay from April 2014 to the present even

---

[33] Def's Counterclaim at ¶ 116.
[34] Def's Counterclaim at ¶¶ 119-121.

though the Department of Labor substantiated his complaints.[35] Therefore, Defendant has clearly alleged a chain of intervening retaliatory acts from April 2014 to July 27, 2015 when Plaintiff filed this action. Johnson v. Advertiser Co., supra at 1279-80.

Additionally, it is simply too early to know whether Defendant can establish a causal connection between his FLSA protected activity and Plaintiff's retaliatory lawsuit with evidence other than mere temporal proximity. This is a matter that should be addressed at the summary judgment stage. Wiggins v. McHugh, supra at * 4. Accordingly, Plaintiff's Motion to Dismiss on the alleged ground that Defendant's FLSA protected activity is too remote in time to establish a causal connection with any alleged adverse actions should be denied.

**C.   Defendant has Plausibly Alleged his Unjust Enrichment Claim**

   **1.   Georgia   Common   Law   Governs   Defendant's   Unjust
           Enrichment Counter Claim**

Defendant seeks to recover unpaid wages from Plaintiff under a theory of unjust enrichment.[36] The Court will have to preliminarily determine whether the law of Massachusetts or the law of Georgia governs Defendant's unjust enrichment claim. The

---

[35] Def's Counterclaim at ¶¶ 120, 134.
[36] Def's Counterclaim at ¶¶ 136-139.

Court should rule that Georgia common law governs Defendant's unjust enrichment claim.

The Supreme Court held in <u>Erie Railroad Co. v. Thompkins</u>, that the substantive law to be applied when federal courts exercise jurisdiction on the grounds of diversity of citizenship is the law of the state as declared by its legislature or courts, except in matters where the federal Constitution or congressional acts govern. <u>Erie Railroad Co. v. Thompkins</u>, 304 U.S. 64, 78 (1938). The Supreme Court reached this holding in order to avoid or eliminate the inequitable administration of the law which permitted the character or result of litigation to materially differ depending upon whether the plaintiff brought the lawsuit in a federal or state court. <u>Erie</u> 304 U.S. at 78. Additionally, the Supreme Court's holding in <u>Erie</u> discourages "forum shopping." <u>Id.</u>

In <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487 (1941), the Supreme Court noted that "the prohibition declared in <u>Erie</u> against such independent determinations by the federal courts extends to the field of conflicts of laws." <u>Klaxon</u>, 313 U.S. at 496 (citations omitted). The Supreme Court reasoned that the conflict of law rules federal courts must apply must conform to those prevailing in the courts of state where the federal court is located in order to prevent the accident of diversity

from disturbing the equal administration of justice in coordinate state and federal courts sitting side-by-side. Id. Thus, the Court has to apply the conflict of law rules of the state of Georgia in determining whether the law of Georgia or the law of Massachusetts governs Defendant's ability to recover from Plaintiff under an unjust enrichment theory.

Georgia's preference for its own common law over that of a foreign forum is well-established through its "presumption of identity rule." Essentially, "where there is not a specific statute in another state which applies, then Georgia courts presume that Georgia's development of common law is identical to the foreign forum's common law and therefore apply the law of the forum – Georgia." Shorewood Packaging Corp. v. Commercial Union Ins. Co., 865 F.Supp. 1577, 1579 (N.D. Ga. 1994).

In its Motion, Plaintiff concedes that there is no Massachusetts statute that governs Defendant's unjust enrichment claim. Plaintiff's position is unsurprising given that unjust enrichment is an equitable doctrine that was developed as part of the common law of contracts to avoid unjust enrichment under a contract implied by law. Joseph M. Still Burn Centers, Inc. v. AmFed Nat. Ins. Co., 702 F.Supp.2d 1371, 1379 (2010).

For the aforementioned reasons, the Court should rule that Georgia's common law governs Defendant's unjust enrichment counter claim.

**2.   The Parties' Written Employment Agreement is Not a Bar to Defendant's Unjust Enrichment Claim**

The Court should deny Plaintiff's Motion pursuant to F.R.C.P. 12(b)(6) because Defendant plausibly alleged that he performed valuable services for Plaintiff before the parties entered into a written employment agreement in May 2010 and after Plaintiff terminated his employment on July 21, 2011. The Court should also deny Plaintiff's Motion pursuant to F.R.C.P. 12(b)(6) because some terms of the parties' employment agreement were in dispute throughout the course of Defendant's employment, the employment agreement was vague in the description of Defendant's compensation and benefits and bonus, and, many changes were made throughout the course of Defendant's employment.

Proof of the existence of an express contract is a bar to recovery in an action in *quantum meruit* **only** where it appears that in the absence of the contract itself there would be no obligation on the part of the defendant to pay anything to or do anything for the plaintiff. Brumby v. Smith & Plaster Co. of Ga., 123 Ga.App. 443 (1971). Under the facts alleged in Defendant's

counter claim, the latter rule is applicable: some terms of the parties' employment agreement were in dispute throughout the course of Defendant's employment;[37] the employment agreement was vague in the description of Defendant's compensation and benefits and bonus;[38] and, many changes were made throughout the course of Defendant's employment.[39] Id. at 444. Therefore, the parties' written employment agreement is not a bar to Defendant's recovery in quantum meruit.

Next, Defendant plausibly alleges that Plaintiff was obligated to compensate him for the valuable services that he performed for Plaintiff on its Okaya, Inc. account during the five (5) week period before the parties entered into a written employment agreement.[40] Defendant alleges that Plaintiff did not pay him for some of the valuable services that he performed during this five-week period.[41] Defendant provided these valuable services to Plaintiff in reliance upon a March 16, 2010 e-mail from Defendant's President, Gorav Aggarwal, in which Mr. Aggarwal promised Defendant that his "[c]omplete benefit package ... will

---

[37] See Def's Counterclaims at ¶¶ 45-50, 56, 58, 63, 65, 69, 83, 85, 87-89, 92-94, 96, 99-100, 104, 110, 115.
[38] See Exhibit A to Plaintiff's Complaint. (Doc. 1-1).
[39] See fn. 38.
[40] Def's Counterclaim at ¶ 41.
[41] Def's Counterclaim at ¶ 42.

be 80% of his [client billing rate] never more and never less."[42] Defendant's hourly billing rate on Plaintiff's Okaya, Inc. account was $50/hr. during this five-week period.[43] Therefore, Defendant plausibly alleges that Plaintiff was unjustly enriched by his labor during the five week period before it could even be argued that the parties' written employment agreement controlled the terms of his compensation.

Defendant also plausibly alleges that he is entitled to recover in *quantum meruit* for the valuable services that he performed for Plaintiff after Plaintiff terminated his employment on July 21, 2011.[44] "[I]f a contract is void, is repudiated, or can only be implied, then *quantum meruit* will allow a recovery if the work or service was accepted and if it had value to the recipient." Watson v. Sierra Contracting Corp., 226 Ga.App. 21, 28 (1997).

Defendant plausibly alleges that Plaintiff voided the parties' written employment agreement when Plaintiff terminated his employment on July 21, 2011.[45] Defendant alleges that Plaintiff's President, Mr. Aggarwal contacted him shortly after he terminated Defendant's employment and offered to re-hire him,

---

[42] Def's Counterclaim at ¶ 9.
[43] Def's Counterclaim at ¶ 15.
[44] Def's Counterclaim at ¶ 100.
[45] Def's Counterclaim at ¶ 100.

but under new conditions.[46] Specifically, Defendant alleges that there was no longer a written employment agreement, just a generic commitment from him that he would "abide by all the company policies in the same way as other full-time employees" of Plaintiff. Defendant continued to work for Plaintiff under that verbal agreement until August 30, 2011 when he resigned.[47] Although Defendant received some income from Plaintiff during that month of work, his income was not commensurate with the valuable services that he performed for Plaintiff.[48]

Accordingly, Plaintiff's Motion to Dismiss on the alleged ground that the parties' written employment agreement bars Defendant's unjust enrichment claim should be denied.

**3.   Defendant's Unjust Enrichment Claim is Not Time-Barred**

The Court should deny Plaintiff's Motion pursuant to F.R.C.P. 12 because Defendant's unjust enrichment claim is compulsory and, therefore, tolled by the filing of Plaintiff's lawsuit on July 27, 2015.

**a.   Defendant's Unjust Enrichment Counter Claim is Compulsory**

Rule 13(a), Fed.R.Civ.P., provides that a counterclaim is compulsory if it "arises out of the transaction

---

[46] Def's Counterclaim at ¶ 104.
[47] Def's Counterclaim at ¶ 114.
[48] Def's Counterclaim at ¶ 115.

or occurrence" that is the subject matter of plaintiff's claim. Four tests have been suggested to further define when a claim and counterclaim arise from the same transaction:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counter claim rule?

3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

4) Is there a logical relation between the claim and counterclaim?

6 Wright & Miller, Federal Practice and Procedure § 1410 at 42 (1971). An affirmative answer to any of the four questions indicates the counterclaim is compulsory. Id. at 43.

Defendant's unjust enrichment Counterclaim is compulsory because substantially the same evidence will support or refute Plaintiff's claim as well as Defendant's Counterclaim. For instance, Plaintiff alleges that Defendant libeled it by accusing it of:

- Making "false promises"

- Making money by "lying and trapping"

- "Cheating"

- Taking its employees "hard earned money and tell[ing] [the employees] they will give it back as a bonus."[49]

Defendant affirmatively pleads the defense of truth and seeks to recover the unpaid wages and overtime pay that Plaintiff withheld from him.[50]

> **b.   The Statute of Limitations on Defendant's Unjust Enrichment Counter Claim was Tolled by the Filing of Plaintiff's Lawsuit**

Defendant asserted his Counterclaims on December 18, 2015 in his first responsive pleading (Doc. No. 17.) to Plaintiff's Complaint filed July 27, 2015. Plaintiff concedes in its Motion that Defendant's unjust enrichment claim accrued on August 30, 2011. Under Georgia law, unjust enrichment claims are subject to a four-year statute of limitations. See Renee Unlimited, Inc. v. City of Atlanta, 301 Ga.App. 254, 258 (2009). Therefore, even though the statute of limitations on Defendant's unjust enrichment counter claim would have otherwise run on August 30, 2015, if the Court rules that Defendant's unjust enrichment claim was compulsory and that the statute of limitations was tolled by the filing of Plaintiff's lawsuit until Defendant's first

---

[49] Pl.'s Comp. at ¶ 56.
[50] Def's Fourth Affirm. Def.; Def's Counterclaims at ¶¶ 136-139.

responsive pleading, then the Court should deny Plaintiff's Motion.

There is a significant split of authority regarding whether a compulsory counterclaim seeking affirmative relief relates back to the opposing party's timely, initial complaint, or if that initial complaint tolls the statute of limitations for compulsory counterclaims. "Some jurisdictions hold that counterclaims seeking affirmative relief are barred by the statute of limitations, while others conclude the timely commencement of the plaintiff's action either tolls or waives the statute of limitations for compulsory counterclaims. Still others hold that compulsory counterclaims relate back to the opposing party's timely complaint." Murray v. Mansheim, 779 N.W.2d 379, 385 (S.D. 2010).

Two recognized authorities on civil procedure acknowledge this issue is unresolved in the courts and that there is a clear split of authority. See 6 Wright, Miller & Kane § 1419; 3 James WM. Moore et al., Moore's Federal Practice § 13.93 (3d ed. 2009) (hereinafter Moore's Federal Practice). Of note, these two treatises are in disagreement as to what constitutes the majority rule. See 3 Moore's Federal Practice § 13.93, at 13–88 ("Counterclaims and cross-claims for affirmative relief are, with some exceptions, subject to the operation of applicable statutes

of limitations."); 6 Wright, Miller & Kane § 1419, at 152 ("[T]he majority view appears to be that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim."). Because of the divided views regarding this issue, the Court's analysis should synthesize the rationale for both positions, consider the merits of both, and reach a conclusion based on those merits.

Under one view, "[i]t is fairly well established under [limitations law] that a counterclaim for affirmative relief ... is subject to the operation of pertinent statutes of limitation." Hurst v. U.S. Dep't of Educ., 901 F.2d 836, 837 (10th Cir. 1990). The apparent rationale for this rule is that a counterclaim seeking affirmative relief "is not stripped of its character as an independent action by acquiring the label counterclaim." Brown v. Hipshire, 553 S.W.2d 570, 572 (Tenn. 1977). Thus, this view disregards equity and advances strict adherence to the statute of limitations reasoning that "our recognition of the legislative prerogative override[s] any justification asserted for extending the life of a counterclaim." Crivaro v. Rader, 469 N.E.2d 1184, 1187 (Ind. Ct. App. 1984).

The contrary view holds that "'the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.'" Burlington

Indus. v. Milliken & Co., 690 F.2d 380, 389 (4th Cir. 1982), cert. denied, 461 U.S. 914 (1983) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1419, at 109 (1971)). This view reflects the rationale put forth by Wright, Miller & Kane:

> This approach precludes plaintiff, when the claim and counterclaim are measured by the same period, from delaying the institution of the action until the statute has almost run on defendant's counterclaim so that it would be barred by the time defendant advanced it. Nor is plaintiff apt to be prejudiced by the tolling of the statute, since he presumably has notice at the time he commences his action of any counterclaim arising out of the same transaction as his suit. Moreover, the necessarily close relationship between the timely claim and the untimely counterclaim should insure that the latter is not "stale" in the sense of evidence and witnesses no longer being available[.]

6 Wright, Miller & Kane § 1419, at 152-53. Therefore, this position embraces equity focusing on the lack of prejudice to a plaintiff. Armstrong v. Logsdon, 469 S.W.2d 342, 343 (Ky. 1971) ("Simple justice dictates that if the plaintiffs are given an opportunity to present a claim for relief based upon a particular automobile collision, the defendant should not be prevented from doing so by a mere technicality." (citation omitted)).

Defendant's research indicates that seven federal circuit courts have refused to toll or waive the statute of limitations, or have noted counterclaims seeking affirmative relief "may not

- 23 -

be allowed."[51] Three federal circuit courts allow the expired compulsory counterclaim to relate back to the initial, timely complaint.[52] Although there is a thirty (30) year-old opinion from

---

[51] See Wells v. Rockefeller, 728 F.2d 209, 214–16 (3d Cir. 1984) (compulsory counterclaims seeking dissolution and accounting and for fraud were barred by statute of limitations); In re Smith, 737 F.2d 1549, 1552–54 (11th Cir. 1984) (disallowing time-barred affirmative claim to be brought as counterclaim noting that "this change of labels does not effect a change in the essential character of the action"); Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., 628 F.2d 1023, 1027 (7th Cir. 1980) ("A counterclaim for affirmative relief may not be asserted if barred by the statute of limitations."); see also Luckenbach S.S. Co. v. United States, 312 F.2d 545, 551 (2d Cir. 1963) ("The defense of reduction or recoupment which arises out of the same transaction as the note or claim survives as long as the cause of action upon the note or claim exists, although an affirmative action upon the subject of it may be barred by the statute of limitations."); City of Grand Rapids, Mich. v. McCurdy, 136 F.2d 615, 619 (6th Cir. 1943) ("The defense of recoupment exists as long as the plaintiff's cause of action exists and may be asserted, though the claim as an independent cause of action is barred by limitations."); Penn. R. Co. v. Miller, 124 F.2d 160, 161–62 (5th Cir. 1941) (noting a counterclaim asserting an "affirmative cause of action [ ] may be barred by limitation"); Williams v. Neely, 134 F. 1, 13 (8th Cir. 1904) (same); cf. Durant v. Murdock, 3 App. D.C. 114, 126–28 (D.C. Cir. 1894) ("[I]t is not the institution of a suit, but the exhibiting of a cause of action, that determines the application of the statute of limitations, whether it be by amendment of the declaration or bill of complaint ... or by the interposition of a counterclaim[.]").

[52] See Religious Tech. Center v. Scott, 82 F.3d 423, 1996 WL 171443, at *8 (9th Cir. 1996) (unpublished) ("[A] compulsory counterclaim relates back to the filing of the original complaint."); Employers Ins. of Wausau v. United States, 764 F.2d 1572, 1576 (Fed. Cir. 1985) ("The institution of a plaintiff's suit suspends the running of limitations on a compulsory counterclaim while the suit is pending."); Burlington Indus. v. Milliken & Co., 690 F.2d 380, 389 (4th Cir. 1982) ("Rule 13(a) contains no mention of relation back. Nonetheless, the better

the Eleventh Circuit that stands for the proposition that counterclaims seeking affirmative relief beyond the statute of limitations are disallowed, this issue has not been reached by the United States Supreme Court. To summarize, although there is a controlling authority in this jurisdiction that disallows compulsory counterclaims filed beyond the applicable statutes of limitations, the issue is unresolved in the federal courts and there is a clear split of authority.

Accordingly, Plaintiff's Motion to Dismiss on the alleged ground that Defendant's unjust enrichment claim is untimely should be denied if the Court rules that Defendant's unjust enrichment claim was compulsory and that the statute of limitations was tolled by the filing of Plaintiff's lawsuit until Defendant's first responsive pleading.

## III. CONCLUSION

For these reasons, Plaintiff's Motion to Dismiss should be denied in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted this 18th day of January, 2016.

---

view holds that 'the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.' " (citation omitted)); <u>Canned Foods, Inc. v. United States</u>, 140 F.Supp. 771, 772 (Ct. Cl. 1956) (same).

**HORNSBY LAW GROUP**


\_/s/ Brandon Hornsby\_\_\_\_
Brandon Hornsby
Ga. State Bar No. 367680
Graham Scofield
Ga. State Bar No. 940312

1180 W Peachtree St NW #2220
Atlanta, Georgia 30309
Tel: 404-577-1505
Fax: 404-577-1565          Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TANISHA SYSTEMS, INC.,

       Plaintiff,

    vs.

PRAKASH CHANDRA,

       Defendant.

Civil Action No.: 1:15-cv-2644

## CERTIFICATE OF SERVICE

This is to certify that on this day, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the following attorneys of record for the Plaintiff:

Andrew B. Flake, *Esq.*
Andrew C. Stevens, *Esq.*
Arnall Golden Gregory LLP
171 17th St. NW
Suite 2100
Atlanta, GA 30363-1031

## CERTIFICATE OF FONT TYPE AND SIZE

The undersigned counsel for Defendant hereby certifies that the within and foregoing was prepared using Courier New, 12-point font in accordance with LR 5.1(B).

This 18th day of January, 2016.

HORNSBY LAW GROUP

_/s/ Brandon Hornsby_____
Brandon Hornsby

- 27 -

```
                                    Ga. State Bar No. 367680
                                    Graham Scofield
                                    Ga. State Bar No. 940312
1180 W Peachtree St NW #2220
Atlanta, Georgia 30309
Tel: 404-577-1505
Fax: 404-577-1565              Attorneys for Defendant
```